**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ANGELIQUE TOCCO,<br>individually and on behalf of a class, | : | No. 14-CV-810 (WHP) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | ECF FILED |
| v. | : |  |
|  | : |  |
| REAL TIME RESOLUTIONS, INC. | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

# DEFENDANT'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................................................... 3

LEGAL STANDARD.................................................................................................................. 4

ARGUMENT.............................................................................................................................. 6

I.     Plaintiff's Claims Under The FDCPA Must Be Dismissed Because Plaintiff
Received A Validation Notice From Real Time's Predecessor-In-Interest And
Real Time Had No Obligation To Send Another Validation Notice To Plaintiff .......... 6

II.    Plaintiff's Claims Premised Upon The Initial Letter Must Be Dismissed Because
Real Time Was Required To Send The Letter Pursuant To RESPA, And The
Letter Was Not Subject To The FDCPA ....................................................................... 9

III.    Plaintiff's Claims Under The FDCPA Must Be Dismissed As Moot As No Case Or
Controversy Exists Between Plaintiff And Real Time ................................................. 11

    A.    Because Real Time Sent Plaintiff an Offer of Judgment in an Amount That
Exceeds the Statutory Damages She Can Recover Under the FDCPA,
Her Claims Are Moot.......................................................................................... 11

    B.    In the Absence of a Claim Against Real Time and Any Interest in the
Outcome of the Litigation, Plaintiff Cannot Adequately Represent the
Purported Class ................................................................................................... 17

CONCLUSION......................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Abrams v. Interco Inc.*,
   719 F.2d 23 (2d Cir. 1983) ............................................................................... 14

*Ambalu v. Rosenblatt*,
   194 F.R.D. 451 (E.D.N.Y. 2000) ........................................................... 5, 12, 14, 16

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 5

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
   426 F.3d 635 (2d Cir. 2005) ............................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....................................... 5

*Boutros v. JTC Painting and Decorating Corp.*,
   No. 12 CIV. 7576, 2013 WL 5637659 (S.D.N.Y. Oct. 15, 2013) ........................... 15

*Comer v. Cisneros*,
   37 F.3d 775 (2d Cir. 1994) ............................................................................... 17

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2012) ............................................................................. 12

*Ditty v. Checkrite LTD, Inc.*,
   973 F. Supp. 1320 (D. Utah 1997) ..................................................................... 6

*Doyle v. Midland Credit Mgmt., Inc.*,
   722 F.3d 78 (2d Cir. 2013) ......................................................................... 12, 15

*Fox v. Bd. of Trustees of State Univ. of N.Y.*,
   42 F.3d 135 (2d Cir. 1994) ......................................................................... 12, 16

*Franco v. Allied Interstate, LLC*,
   No. 13 Civ. 4053, 2014 WL 1329168 (S.D.N.Y. Apr. 2, 2014) ...................... 2, 14, 15

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013) ..................................................................................... 15

*Hart v. FCI Lender Services, Inc.*,
   No. 13-CV-6076, 2014 WL 198337 (W.D.N.Y. Jan. 15, 2014) ......................... 10, 11

*Huckfeldt v. BAC Home Loans Servicing, LP*,
   No. 10-cv-1072, 2011 WL 4502036  (D. Colo. Sept. 29, 2011) ........................... 7

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011) ............................................................................. 17

*Koch v. Christie's International PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011) ............................................................... 4

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ............................................................................. 3

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) ................................................................................... 12, 16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 11

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ............................................................................. 4

*Moore v. Mortgage Elec. Registration Sys., Inc.*,
  10-CV-241-JL, 2013 WL 1773647 (D.N.H. Apr. 25, 2013) ............................. 8

*Nichols v. Byrd*,
  435 F. Supp. 2d 1101 (D.Nev. 2006) ............................................................... 6

*Oppong v. First Union Mortg. Corp.*,
  566 F. Supp. 2d 395 (E.D. Pa. 2008) ............................................................... 7

*Paris v. Steinberg & Steinberg*,
  828 F. Supp. 2d 1212 (W.D. Wash. 2011) ....................................................... 7

*Peterson v. Cont'l Airlines, Inc.*,
  970 F. Supp. 246 (S.D.N.Y. 1997) ................................................................... 4

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) ......................................................................................... 11

*S. Cherry Street, LLC v. Hennessee Group LLC*,
  573 F.3d 98 (2d Cir. 2009) ............................................................................... 5

*Senftle v. Landau*,
  390 F. Supp. 2d 463 (D.Md. 2005) ................................................................... 7

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ..................................................................... 17

*Swan v. Stoneman*,
  635 F.2d 97 (2d Cir.1980) ............................................................................... 17

*Thompson v. BAC Home Loans Servicing, L.P.*,
  No. 09-CV-311, 2010 WL 1286747 (N.D. Ind. Mar. 26, 2010) ..................... 10

*Tocco v. Solace Financial, LLC*,
  No. 11 CV 3240 (S.D.N.Y. filed on May 12, 2011) ......................................... 4

*Tratt v. Retrieval Masters Creditors Bureau, Inc.*,
  No. 00-CV-4560, 2001 WL 667602 (E.D.N.Y. May 23, 2001) ....................... 17

*United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*,
  508 U.S. 439 (1993) ......................................................................................... 11

*Weiss v. Fein, Such, Kahn & Shepard, P.C.,*
    No. 01 Civ. 1086, 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002) ........................................ 14, 17

*Wilner v. OSI Collection Servs., Inc.,*
    198 F.R.D. 393 (S.D.N.Y. 2001) ............................................................................. 13, 14, 17

## Statutes

12 U.S.C § 2605(b) .................................................................................................................... 9

15 U.S.C. § 1692g .............................................................................................................. *passim*

15 U.S.C. § 1692k .............................................................................................................. *passim*

U.S. Const. art. III ..................................................................................................................... 11

## Rules

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 1, 4, 5, 14

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 1, 5

Fed. R. Civ. P. 12(h)(3) ........................................................................................................ 4, 12

Fed. R. Civ. P. 68 .............................................................................................................. *passim*

Defendant Real Time Resolutions, Inc. ("Real Time" or "Defendant"), by and through its counsel, Reed Smith LLP, hereby submits this memorandum of law and accompanying Declaration of Casey D. Laffey, dated June 27, 2014 ("Laffey Decl."), in support of its motion to dismiss the Complaint of plaintiff Angelique Tocco ("Tocco" or "Plaintiff"), individually and as the representative of a putative class, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises out of two form letters, dated July 31, 2013 and October 1, 2013, that Real Time, a debt collections company, sent to Plaintiff, a debtor, that she now contends violated the federal Fair Debt Collection Practices Act ("FDCPA"). In particular, Plaintiff alleges that the two form letters violated the FDCPA because they were "initial communications" that failed to include the FDCPA's requisite "validation notice" information. Based upon these form letters, Plaintiff purportedly seeks to represent a class of other persons that received similar letters from Real Time. However, Plaintiff's claims must be dismissed as a matter of law for three reasons.

***First***, under the prevailing FDCPA case law, Real Time had no obligation to send Plaintiff a validation notice because she received a validation notice from the prior company that attempted to collect the same debt at issue here, Solace Financial, LLC ("Solace Financial"). Not only is it undisputed that Plaintiff received a validation notice from Solace Financial, but Plaintiff previously filed suit against Solace Financial based upon the adequacy of its validation notice, a fact that this Court can – and should – consider under judicial notice. As the case law makes clear, Plaintiff need only receive a ***single validation notice*** for FDCPA purposes, which Plaintiff indisputably received from Solace Financial. Thus, Real Time was not obligated to send a ***second*** validation notice to Plaintiff, and her claims premised upon this purported violation of the FDCPA should be dismissed.

***Second***, the initial letter sent to Plaintiff – the July 31, 2013 letter – was a required notice under the Real Estate Settlement Procedures Act ("RESPA"), and it cannot form the basis for a claim under the FDCPA.  Because Real Time was required to send the July 31, 2013 letter under RESPA to advise Plaintiff that her debt had been transferred from Solace Financial to Real Time, it was informational in nature rather than "in connection with the collection of any debt," which is required for a communication to be subject to the FDCPA.  Thus, Plaintiff's claims premised upon the July 31, 2013 letter should be dismissed.

***Finally***, Plaintiff's claims are now moot as a result of the FDCPA's cap on statutory damages and Plaintiff's refusal to accept Real Time's Rule 68 offer of judgment.  Because the FDCPA caps statutory damages at $1,000, and Plaintiff has not sustained – let alone alleged – any actual damages, her maximum potential recovery in this case is limited to $1,000, plus reasonable attorneys' costs and fees.  On February 27, 2014, Real Time offered judgment to Plaintiff in the amount of $1,100, plus reasonable attorneys' fees and costs, which not only satisfies – but ***exceeds*** – the statutory amount Plaintiff could receive if her claims were ultimately successful.  Thus, this Court lacks subject matter jurisdiction over this dispute because there is no claim or controversy as to Plaintiff's FDCPA claims for this Court to adjudicate, and Plaintiff's individual and putative class claims are moot.

In fact, in line with overwhelming authority, Judge Katherine B. Forrest of this Court recently rendered a decision dismissing a putative class action brought under the FDCPA on the precise grounds outlined herein.  In particular, Judge Forrest denied the plaintiff's motion for class certification and dismissed the plaintiff's complaint in its entirety, holding that "defendant's Rule 68 offer of judgment rendered plaintiff's claim moot notwithstanding the pending class certification motion."  *Franco v. Allied Interstate, LLC*, No. 13 Civ. 4053, 2014

WL 1329168, at *5 (S.D.N.Y. Apr. 2, 2014). In so holding, Judge Forrest found that the Court lacked subject matter jurisdiction over the action because of the Rule 68 offer of judgment, and this same reasoning applies here to warrant dismissal of this action for lack of subject matter jurisdiction.

Accordingly, this action should be dismissed in its entirety and costs should be awarded in favor of Defendant.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

On February 10, 2014, Plaintiff filed the instant putative class action against Defendant, asserting two separate causes of action under the FDCPA based, respectively, upon July 31, 2013 and October 1, 2013 form letters that Defendant sent to Plaintiff. The Complaint does not allege any actual damages, and only seeks the recovery of statutory damages under the FDCPA.[2]

On February 27, 2014, Defendant served upon Plaintiff an offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, in the amount of $1,100, plus reasonable attorneys' fees and costs, in satisfaction of Plaintiff's individual claims against Defendant (the "Offer of Judgment").[3] Plaintiff did not accept the Offer of Judgment.

During an April 23, 2014 conference, the Court granted Real Time leave to make the instant motion. The Court also ruled that it would treat Plaintiff's letter, dated February 21,

---

[1]     Unless stated otherwise, each of these facts may be considered by the Court on a motion to dismiss because they are either alleged in Plaintiff's Complaint, based upon documents referenced in or attached to the Complaint, or matters that the Court may take judicial notice. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Such facts are accepted as true for purposes of this motion to dismiss only.

[2]     A true and correct copy of Plaintiff's Complaint is annexed to the Laffey Declaration, at Exhibit A.

[3]     A true and correct copy of the Offer of Judgment is annexed to the Laffey Declaration, at Exhibit B.

2014, requesting a pre-motion conference to make a motion for class certification as the filing of such a motion in considering Defendant's motion to dismiss.

Prior to commencing this action, Plaintiff previously filed suit against Real Time's predecessor-in-interest, Solace Financial, that was attempting to collect the same debt of Plaintiff that is at issue here, in a case styled *Tocco v. Solace Financial, LLC,* No. 11 CV 3240 (S.D.N.Y. filed on May 12, 2011) (the "Solace Financial Action"). In that lawsuit, filed in this Court over three years ago, Plaintiff brought a putative class action against Solace Financial based upon the allegation that a collection letter sent to Plaintiff by Solace Financial misidentified the creditor in violation of the FDCPA.[4] Attached to Plaintiff's Complaint in the Solace Financial Action was a copy of the letter from Solace Financial, which contains the validation notice required by the FDCPA.[5]

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 639 (2d Cir. 2005); *Peterson v. Cont'l Airlines, Inc.,* 970 F. Supp. 246, 249 (S.D.N.Y. 1997). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3); *see also Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R.

---

[4]      A true and correct copy of the Complaint filed in the Solace Financial Action is annexed to the Laffey Declaration, at Exhibit C.

[5]      Real Time requests that the Court take judicial notice of the Complaint filed by Plaintiff in the Solace Financial Action because it is well-known to Plaintiff since she filed the lawsuit and it is integral to the Complaint since it also relates to the same debt of Plaintiff at issue here. *See Koch v. Christie's International PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) ("[C]ourts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint.")

Civ. P. 12(b)(1)); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (dismissing plaintiff's FDCPA claim as moot for lack of subject matter jurisdiction).

With respect to a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In deciding a motion to dismiss, federal courts must accept as true "all 'well-pleaded factual allegations'" in the complaint and then "'determine whether they plausibly give rise to an entitlement of relief.'" *S. Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 104 (2d Cir. 2009).

"Factual allegations must be enough to raise a right of relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss, the court must accept as true the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50. Indeed, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original). The federal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950.

Under the legal standards for motions under Rule 12(b)(1) and 12(b)(6), Plaintiff's Complaint must be dismissed in its entirety.

## ARGUMENT

## POINT I

## PLAINTIFF'S CLAIMS UNDER THE FDCPA MUST BE DISMISSED BECAUSE PLAINTIFF RECEIVED A VALIDATION NOTICE FROM REAL TIME'S PREDECESSOR-IN-INTEREST AND REAL TIME HAD NO OBLIGATION TO SEND ANOTHER VALIDATION NOTICE TO PLAINTIFF

The crux of Plaintiff's claims in this action is that Real Time's July 13 and October 1, 2013 letters did not contain an adequate "validation notice" as required by the FDCPA. However, the case law is clear that Real Time had no obligation to send *any* validation notice to Plaintiff because she previously received a validation notice from a Real Time's predecessor-in-interest, Solace Financial.

By way of background, under the FDCPA, "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall ... send the consumer a written notice containing" certain prescribed information to enable the consumer to challenge the validity of the debt. 15 U.S.C. § 1692g. The validation notice must inform the debtor that he/she has thirty days after receipt to dispute the debt; if a dispute is made, the debt collector is required to provide verification of the debt. *Id.*

Courts have construed the validation notice of Section 1692g to apply to the *debt* at issue, not the debt collector attempting to the collect the debt. As such, the debtor is entitled to a single validation notice relating to the debt, even if there are successive debt collectors. For example, in *Ditty v. Checkrite LTD, Inc.*, the Court held that "Section 1692g does not require another debt collector, undertaking collection efforts after a validation notice has been timely sent, to provide additional notice and another thirty-day validation period." 973 F. Supp. 1320, 1329 (D. Utah 1997); *see also Nichols v. Byrd*, 435 F. Supp. 2d 1101, 1106 (D.Nev. 2006) (holding that if Congress had intended to obligate every subsequent debt collector beyond the first to provide a

validation notice it would have explicitly called for it in 15 U.S.C. § 1692g). *Accord Senftle v.*

*Landau*, 390 F. Supp. 2d 463, 473 (D.Md. 2005) (same).

The *Senftle* Court looked to the plain language of 15 U.S.C. § 1692g, stating:

> within five days after *the initial communication* with a consumer in connection
> with the collection of any debt, a debt collector shall unless the following
> information is contained in the initial communication..., send the consumer
> written notice." Though "communication" is broadly defined, the statute
> explicitly refers in the singular to *"the initial communication."* Again, had
> Congress intended that there might be more than one initial communication with a
> debtor on a given debt, it certainly could have provided that, such as by explicitly
> requiring both *initial* and successive debt collectors to provide the § 1692g(a)
> validation notice. In fact, Congress made just such distinctions in § 1692e(11)
> when it distinguished between *initial* and *subsequent communications* to a debtor
> on a given debt. See 15 U.S.C. § 1692e(11). Here the preeminent canon of
> statutory interpretation requires the court to "presume that the legislature says in a
> statute what it means and means in a statute what it says there." (Citations
> omitted). The Court thus holds that there is only one "initial communication" with
> a debtor on a given debt under § 1692g(a), even though subsequent debt collectors
> may enter the picture.

390 F. Supp. 2d at 473. Similarly, the Court in *Oppong v. First Union Mortg. Corp.*, found:

> Under the FDCPA, the goal of the initial communication is to advise the debtor of
> his rights and obligations to his creditor. Once the validation information is
> provided in the initial communication, and once the debtor is made aware of his
> rights at the time the collection process begins, it would serve no purpose to
> require that the same information be given again and again, each time the
> servicing function was passed from one creditor to another.

566 F. Supp. 2d 395, 403 (E.D. Pa. 2008); *see also Paris v. Steinberg & Steinberg*, 828 F. Supp.

2d 1212, 1222 (W.D. Wash. 2011) ("The goal of the FDCPA's initial communication

requirement is to advise the debtor of his rights and obligations to the creditor—not advise the

debtor of each and every debt collector.")

Moreover, this position was recently reiterated by the Court in *Huckfeldt v. BAC Home*

*Loans Servicing, LP*, as follows:

> The FDCPA's focus is on "debts," not creditors. 15 U.S.C. § 1692g(a) speaks of
> disclosures that are required when collecting "any debt," and there after speaks of
> verification that must be made of "the debt." This language makes clear that

notice is required to be given once collection activities begin for each *debt*, not that notice is required each time collection activities are begun on the same debt but on behalf of a new transferee creditor. This is consistent with the purpose of the FDCPA. As noted in *Maynard [v. Cannon, P.C.*, 401 Fed. Appx. 389 (10th Cir. 2010)], the purpose of the notice and verification provisions are to permit the debtor the opportunity to ensure that he or she is not being dunned for debts owed by another or for debts that he or she has already paid. Once that verification has been requested by the debtor and obtained by the debt collector, requiring re-verification each time the debt changes hands offers no new protection to the debtor and only serves as a potential trap for subsequent creditors.

No. 10-cv-1072, 2011 WL 4502036 at *5 (D. Colo. Sept. 29, 2011); *see also Moore v. Mortgage Elec. Registration Sys., Inc.*, 10-CV-241-JL, 2013 WL 1773647 (D.N.H. Apr. 25, 2013) ("Because the [plaintiffs] had already received a § 1692g(a) validation notice from [a prior debt collector] in the summer of 2009, [the defendant] was not required to send a new notice to the [plaintiffs] when it undertook its efforts to collect their debt.")

Here, it is undisputed that Plaintiff previously received a validation notice from Solace Financial, the prior company that attempted to collect the debt at issue here. Indeed, Plaintiff filed a lawsuit against Solace Financial based upon an alleged problem with the letter in which the validation notice was contained. (*See* Laffey Decl., Exh. C.) Plaintiff cannot dispute that the validation notice that she received from Solace Financial related to the exact same debt that Real Time has been attempting to collect, and was the subject of Real Time's July 31 and October 1, 2013 letters at issue here. Thus, Plaintiff received the only validation notice she was entitled to receive related to the debt at issue, and, as a matter of law, Real Time had no obligation to send *another* validation notice to Plaintiff.

Moreover, given that Solace Financial sent its validation notice to Plaintiff over three years ago, in March 2011, and that the FDCPA required Plaintiff to verify the debt at issue within 30 days of receiving the validation notice, it is likely that Plaintiff's debt was verified long ago. In fact, Plaintiff's Complaint is devoid of any allegation or suggestion that the debt

that Real Time is attempting to collect was not actually Plaintiff's debt. In other words, Plaintiff's claims against Real Time appear to be nothing more than an attempt to recover statutory damages under the FDCPA rather than redress some actual harm that Plaintiff may have suffered. To hold Real Time liable in this situation would serve no purpose. The purpose of verification is to ensure the debtor knows what debt is being collected and that the debt collector has the proper debtor. There was no confusion by Plaintiff what debt Real Time was attempting to collect, especially given that Plaintiff's debt was likely verified by Solace Financial over three years ago.

Accordingly, Plaintiff received a validation notice as required by the FDCPA, and her claims against Real Time for the failure to receive *another* such notice must be dismissed as a matter of law.

## POINT II

### PLAINTIFF'S CLAIMS PREMISED UPON THE INITIAL LETTER MUST BE DISMISSED BECAUSE REAL TIME WAS REQUIRED TO SEND THE LETTER PURSUANT TO RESPA, AND THE LETTER WAS NOT SUBJECT TO THE FDCPA

Plaintiff's claims premised upon the July 31, 2013 letter allegedly not containing the requisite FDCPA validation notice should also be dismissed for an independent reason: Real Time was required to send the July 31, 2013 letter pursuant to RESPA, 12 U.S.C § 2605(b), in order to advise Plaintiff that her mortgage loan had been transferred to Real Time (the "RESPA Letter"), and the letter was not subject to the FDCPA's requirements.

The FDCPA applies only to communications "in connection with the collection of any debt," 15 U.S.C. § 1692g(a), but the RESPA Letter, by contrast, is informational only. (*See* Laffey Decl., Exh. A at Exh. A.) The RESPA Letter plainly is not a communication to collect a debt, and it consists primarily of the content RESPA prescribes. For example, it is titled "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS" and does

not even demand payment. (*Id.*) Courts have routinely held that RESPA-mandated notices are not subject to the FDCPA and cannot form the basis of a claim premised upon the RESPA notice lacking language prescribed by the FDCPA. *See, e.g., Hart v. FCI Lender Services, Inc.*, No. 13-CV-6076, 2014 WL 198337, at *6 (W.D.N.Y. Jan. 15, 2014); *Thompson v. BAC Home Loans Servicing*, L.P., No. 09-CV-311, 2010 WL 1286747 (N.D. Ind. Mar. 26, 2010).

In the essentially identical case of *Thompson v. BAC Home Loans Servicing*, L.P., the defendants sent a RESPA-mandated transfer-of-servicing notice to the plaintiff after acquiring his home mortgage loan from another loan servicer. 2010 WL 1286747 at *1 and *3. The plaintiff filed suit, individually and on behalf of a putative class, alleging that the RESPA notice violated Section 1692g. *Id.* In granting the defendant's motion to dismiss, the Court held that the RESPA notice was not sent in connection with the collection of a debt, as it did not

> address the status of the [p]laintiff's home mortgage loan, declare that it is in default, or demand any payment pursuant to such default . . . . There [was] no indication that the [d]efendants [were] undertaking collection efforts for missing or late payments. Rather, they [were] providing information about the new servicer, including its payment remittance address, so that the consumer might necessitate the sending of a real dun . . . . There [was] no mention of default, delinquency, or foreclosure.

*Id.* at *4 (citations omitted). Thus, although sent from an entity whose "ultimate goal" was "ensuring payment of the debt," the communication itself did not aim to induce payment, notwithstanding its form language stating "this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose." *Id.* at *5. Because the FDCPA did not apply, the Court granted the defendants' motion to dismiss. *Id*

Similarly, in *Hart,* the Court adopted the reasoning in *Thompson,* and held that the RESPA-mandated notice at issue – which is nearly identical to the RESPA Letter here – was not subject to the FDCPA because it "is informational in nature, and does not reference an amount

owed or threaten to take any action if payment is not made."[6]  2014 WL 198337, at *6.  The same result should be reached here.  Real Time sent the RESPA Letter as required by RESPA for the express purpose of advising Plaintiff that her mortgage loan had been transferred from Solace Financial to Real Time.  There is nothing in the RESPA Letter indicating that Real Time was attempting to collect a debt, and, therefore, the RESPA Letter was "informational in nature" like the letters in *Thompson* and *Hart*.[7]

Accordingly, Plaintiff's claims premised upon the RESPA Letter sent to Plaintiff should be dismissed for this additional reason.

## POINT III

## PLAINTIFF'S CLAIMS UNDER THE FDCPA MUST BE DISMISSED AS MOOT AS NO CASE OR CONTROVERSY EXISTS BETWEEN PLAINTIFF AND REAL TIME

### A.   Because Real Time Sent Plaintiff an Offer of Judgment in an Amount That Exceeds the Statutory Damages She Can Recover Under the FDCPA, Her Claims Are Moot

Article III of the United States Constitution limits the judicial authority of the federal court system to "cases" and "controversies."  U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  "The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions."  *United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 446 (1993) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  If a federal court lacks subject matter jurisdiction over a cause of action, the court "shall dismiss

---

[6]     Notably, the same law firm that is representing Plaintiff here also argued in *Thompson* and *Hart* – unsuccessfully – that a similar RESPA-mandated notice was an attempt to collect a debt.

[7]     Although the RESPA Letter also includes the FDCPA-mandated disclaimer language stating, *inter alia*, that the RESPA Letter is "an attempt to collect upon a debt," such language is not dispositive, nor even particularly relevant.  Because the RESPA Letter is an informational communication, rather than a communication demanding or inducing payment of a debt, the FDCPA does not govern its content.

the action." Fed. R. Civ. P. 12(h)(3). The case or controversy requirement continues to exist throughout the entire litigation.

For this Court to maintain subject matter jurisdiction, "the parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Because the plaintiff is required to have a personal stake in the litigation, "without such a personal stake, a court lacks subject matter jurisdiction and the case must be dismissed." *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452 (E.D.N.Y. 2000) (citing *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action.")).

Here, Real Time has already offered, pursuant to Rule 68, to pay Plaintiff an amount that exceeds the amount she can recover in this action under the FDCPA, which she refused to accept. As a result of her refusal, Real Time's Offer of Judgment divested Plaintiff of any personal stake in the litigation, thereby depriving this Court of subject matter jurisdiction. *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78 (2d Cir. 2013) (holding that an offer of judgment moots a plaintiff's claim where the defendant's offer exceeds the amount plaintiff could recover); *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2012) ("[O]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because [he] has no remaining stake.")

By way of background, Plaintiff alleges that Real Time violated the FDCPA, and if she successfully proves her case, the most she could recover from Real Time are (1) "any actual damages sustained" as a result of the debt collector's violation of the FDCPA; (2) "such additional damages as the court may allow, but not exceeding $1,000," and (3) "the costs of the

action, together with a reasonable attorney's fee determined by the court." 15 U.S.C. § 1692k (a) (1), (2)(A), (3).  Plaintiff has not alleged in the Complaint that she suffered any "actual damages" so her potential recovery is limited to statutory damages and reasonable attorneys' fees and costs.[8]

Rule 68 of the Federal Rules of Civil Procedure permits a defendant to serve upon an adverse party an offer to allow judgment to be entered in favor of the plaintiff.  A valid offer of judgment that would satisfy a plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the Court to resolve, effectively mooting the action and depriving the Court of jurisdiction.  Real Time's Rule 68 Offer of Judgment permitted judgment to be taken against it in the amount of $1,100 plus reasonable attorneys' fees and costs as recoverable by law and allowed by the Court.  The full amount of statutory damages, costs, and allowable attorneys' fees have been offered to Plaintiff and rejected.  Under the FDCPA, Plaintiff cannot, under any circumstances, recover more statutory damages, costs, and attorneys' fees than Real Time has offered. *See Wilner v. OSI Collection Servs., Inc.,* 198 F.R.D. 393, 394-95 (S.D.N.Y. 2001) ("Plaintiff has not suffered any actual damages; his maximum recovery is thus $1,000, plus costs of the suit and a reasonable attorney's fee.").

Courts in the Second Circuit, under identical circumstances, have repeatedly dismissed putative class actions for lack of subject matter jurisdiction after the plaintiff refused to accept a Rule 68 offer of judgment that covered the maximum statutory damages under the FDCPA.  For example, the Court in *Wilner,* dismissing the complaint *sua sponte,* held:

> When defendant offers all that [a plaintiff can] hope to recover through [the] litigation, there is no justification for taking the time of the court and the defendant in the pursuit of [a] minuscule individual claim[ ] which defendant has

---

[8]       Plaintiff's Complaint seeks only "(a) Statutory damages; (b) Attorney's fees, litigation expenses and costs of suit; (c) Such other or further relief as the Court deems proper." (Laffey Decl., Exh. A.)

> ... satisfied. Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate ... and a plaintiff who refuses to acknowledge this loses outright, under Fed.R.Civ.P. 12(b)(1), because he has no remaining stake.

198 F.R.D. at 394-95 (internal citations omitted); *see also Ambalu*, 194 F.R.D. at 451; *Abrams v. Interco Inc.*, 719 F.2d 23, 32 (2d Cir. 1983); *Weiss v. Fein, Such, Kahn & Shepard, P.C.*, No. 01 Civ. 1086, 2002 WL 449653 (S.D.N.Y. Mar. 22, 2002) (granting a motion to dismiss for lack of subject matter jurisdiction where the defendant's Rule 68 offer of judgment included the maximum statutory amount that the plaintiff could recover under the FDCPA).

In line with this overwhelming authority, Judge Forrest of this Court recently dismissed a putative class action brought under the FDCPA on the precise grounds outlined above. *See Franco v. Allied Interstate, LLC*, No. 13 Civ. 4053, 2014 WL 1329168 (S.D.N.Y. Apr. 2, 2014). In that case, the plaintiff alleged that the defendant, Allied Interstate LLC ("Allied"), sent letters to a class of consumers in violation of the FDCPA. Thereafter, Allied made an offer of judgment to the plaintiff in the amount of $1,501 plus reasonable attorneys' fees and costs and, upon expiration of the offer, moved to dismiss. In her Memorandum Decision and Order, Judge Forrest denied class certification and dismissed the complaint in its entirety, holding that "defendant's Rule 68 offer of judgment rendered plaintiff's claim moot notwithstanding the pending class certification motion. Accordingly, the Court lacks subject matter jurisdiction over the action, and the complaint must be dismissed." *Franco*, 2014 WL 1329168, at *5.

Judge Forrest reasoned that "[b]ecause plaintiff does not allege actual damages, defendant's Rule 68 offer, which permitted judgment to be taken against it for $1,501 plus reasonable costs and attorneys' fees as allowed by the Court, exceeds the available amount of statutory damages, costs, and allowable attorneys' fees. Because plaintiff refused that offer, plaintiffs claim is moot." *Franco*, 2014 WL 1329168, at *2 (citing *Doyle*, 722 F.3d at 81); *see*

*also Boutros v. JTC Painting and Decorating Corp.*, No. 12 CIV. 7576, 2013 WL 5637659, at \*4 (S.D.N.Y. Oct. 15, 2013) ("Although there are good reasons to question the proposition that an unaccepted, or rejected, offer of judgment under Rule 68 can moot a plaintiff's claim ... the ship has sailed on that question, at least in this Circuit, as the Court of Appeals has made clear [that an unaccepted offer of judgment can moot a plaintiff's claim].") (internal citation and quotation omitted).

Judge Forrest further noted that district courts in this Circuit are split on the question of whether an offer of judgment to an individual plaintiff made before a certification motion is filed moots the putative class action, and acknowledged the Supreme Court's concern that defendants could "pick off" plaintiffs by offering judgment before class certification, thus frustrating the objective of class actions. *Franco*, 2014 WL 1329168, at \*3-4. However, Judge Forrest held that the "picking off" concern is inapposite in the plaintiff's case (as it is here, with Tocco's case), since "a situation involving statutory damages ... does not raise such concerns [because] unlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review [and any] putative plaintiffs remain free to vindicate their rights in their own suits ... even if a class action proves untenable." *Id.* at 4-5 (citing *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1531 (2013)). Thus, she concluded that, while the defendant offered to address the plaintiff's harm and make him whole, "other potential plaintiffs remain free to vindicate their rights in their own suits" (and recover any and all reasonable attorney's costs and fees from the defendant) despite the mootness of the plaintiff's individual claim. *Franco*, 2014 WL 1329168, at \*4-5.

In sum, Judge Forest properly held that the rationale from which conflicting case law on this issue is predicated – *i.e.*, a concern that individual plaintiffs will not bring lawsuits because

the amount of a claim is small in proportion to the amount of attorneys' fees – is not implicated here as the FDCPA permits an individual plaintiff to recover his/her attorneys' fees regardless of the amount of the claim and the presence of actual damages. Thus, the cost of commencing individual FDCPA litigation will not prohibit the filing of individual suits because each individual plaintiff, if successful, can recover his/her attorneys' fees under the FDCPA statute.

Here, Plaintiff's FDCPA claims initially satisfied the constitutional case or controversy requirement. However, "[i]t is not enough that a dispute was very much alive when the suit was filed … [t]he parties must continue to have a personal stake in the outcome of lawsuit." *Lewis*, 494 U.S. at 477-78. Without such a personal stake, the Court lacks subject matter jurisdiction over this action, mandating dismissal. *See Ambalu*, 194 F.R.D. at 452 (citing *Fox* 42 F.3d at 140). There can be no doubt that Real Time's Offer of Judgment provides Plaintiff with more relief than she could reasonably expect to receive individually if she pursued this case to judgment. Because the FDCPA caps a plaintiff's statutory damages at $1,000 plus reasonable attorneys' fees and costs, Plaintiff's maximum potential recovery in this case is *less than* the amount provided for in the Offer of Judgment ($1,100 plus reasonable attorneys' fees). As Plaintiff has been offered the maximum recoverable damages, and more, but refused such an offer, she no longer has an ongoing controversy with Real Time. There is nothing further for Plaintiff to gain by litigating her claims; therefore, Plaintiff no longer has a personal stake in the outcome of this lawsuit. As a result, jurisdiction of Plaintiff's FDCPA claims cannot be sustained and, accordingly, the Complaint should be dismissed for lack of subject matter jurisdiction.

**B.      In the Absence of a Claim Against Real Time and Any Interest in the Outcome of the Litigation, Plaintiff Cannot Adequately Represent the Purported Class**

Because there is no case or controversy between the parties in this case as Plaintiff's claims are moot and subject to dismissal, Plaintiff has been rendered unable to represent the purported class in the absence of her own claim.

Rule 23(a)(4) requires that the class representative have sufficient interest in the outcome of the case to "fairly and adequately protect the interests of the class" and to "vigorously pursu[e] the claims of the class." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011). An adequate class representative must "possess the same interest and suffer the same injury as the class members." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 320 (S.D.N.Y. 2003) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)).

Here, as detailed above, Tocco has no remaining stake or interest in the outcome of this litigation whatsoever, as her claims have been rendered moot and, with them, the entire action. If a named representative's claim becomes moot before class certification, as is the case here, the entire case is to be dismissed for lack of subject matter jurisdiction. *See Tratt v. Retrieval Masters Creditors Bureau, Inc.,* No. 00-CV-4560, 2001 WL 667602, at *2 (E.D.N.Y. May 23, 2001); *Weiss,* 2002 WL 449653, at * 2; *Wilner,* 148 F.R.D. at 395-96. In other words, "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot[,]" *Wilner,* 148 F.R.D. at 395-96 (quoting *Comer v. Cisneros,* 37 F.3d 775, 798 (2d Cir. 1994)), and "a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified." *Id.* at 395-96 (quoting *Swan v. Stoneman,* 635 F.2d 97, 102 n.6 (2d Cir.1980)). Thus, with no interest or stake in this litigation, Plaintiff is unfit to serve as a class representative.

Accordingly, Plaintiff's individual claims along with the entire putative class action must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety and Defendant should be awarded its costs, along with such other and further relief as the Court deems just, proper and equitable.

Dated:  New York, New York
       June 27, 2014

                            REED SMITH LLP

                            By: *<u>/s/ Casey D. Laffey</u>*
                                    Casey D. Laffey
                                    Geoffrey G. Young
                            599 Lexington Avenue
                            New York, New York 10022
                            Tel. (212) 521-5400
                            Fax. (212) 521-5450
                            *Attorneys for Defendant*