**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
ANGELIQUE TOCCO,                             :
individually and on behalf of a class,       :
                                             :          14-cv-810-WHP
                    Plaintiff,               :
                                             :
        v.                                   :
                                             :
REAL TIME RESOLUTIONS, INC.,                 :
                                             :
                    Defendant.               :
-----------------------------------------------------------------x
```

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
        & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, New York 11556
(516) 522-2621

## <u>TABLE OF CONTENTS</u>

I.      FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     REAL TIME WAS REQUIRED TO SEND A LETTER THAT COMPLIED WITH
        §1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.      REAL TIME'S SENDING OF A RESPA NOTICE DOES NOT EXEMPT IT
        FROM COMPLYING WITH THE NOTICE REQUIREMENTS OF THE FDCPA . . . 11

VI.     PLAINTIFF'S CLAIMS ARE NOT MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## *Cases*

*3081 Main Street, LLC v. Business Owners Liability Team LLC*, No. 3:11–cv–1320 (SRU), 2012 WL 4755048 (D.Conn. Sept. 24, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Allen v. LaSalle Bank*, 629 F.3d 364 (3ʳᵈ Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Bartlett v. Heibl*, 128 F.3d 497, 499 (7ᵗʰ Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*Blair v. Sherman Acquisition*, no. 04 Civ. 4718, 2004 WL 2870080, at *2 (N.D.Ill. Dec. 13, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*Cerrato v. Solomon & Solomon*, 909 F.Supp.2d 139 (D.Conn. 2012) . . . . . . . . . . . . . . . . . .   15

*Chase Bank USA, N.A. v. Cardello,* 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857, 243 N.Y.L.J. 48 (Richmond Co. Civ. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

*Chauncey v. JDR Recovery Corp., supra*, 118 F.3d 516 (7th Cir. 1997) . . . . . . . . . . . . . . . . .   13

*Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993) . . . . . . . . . . . . . . .    3

*Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666  (7ᵗʰ Cir. 2001) . . . . . . . . . . . . . . . . . . . . . .    3

*Damasco v. Clearwire Corp.*, 662 F.3d. 891 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Ditty v. Checkrite LTD*, 973 F. Supp. 1320 (D. Utah 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Doyle v. Midland Credit Mgmt, Inc.*, 722 F.3d 78 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . .   19

*Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 157 (2d Cir. 2005) . . . . . . . . . .   12

*Foti v. NCO Fin. Sys., Inc.*, 424 F.Supp.2d 643, 661 (S.D.N.Y.2006) . . . . . . . . . . . . .   4, 14, 17

*Francis v. Snyder*, 389 F. Supp.2d 1034, 1040 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . .    7

*FTC v. American Credit Crunchers, LLC*, et al., No. 12cv1028 (N. Dist. Ill.) . . . . . . . . . . . . . .    9

*FTC v. Broadway Global Master Inc., also d/b/a BGM, et al.* No. 212-cv-00855-JAM-GGH

(E. Dist. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*FTC v. Caprice Marketing a/k/a Vantage Funding  et al.*,  No. 13-CV-6072 (N. Dist. Ill.). . . .  9

*FTC v. Pinnacle Payment Services, LLC, et al.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*FTC v. Pro Credit Group, et al.*, No.  8:12-cv-00586 (M. Dist. Fla.) . . . . . . . . . . . . . . . . . . . . 9

*FTC v. Shaffner*, 626 F.2d 32, 35 (7ᵗʰ Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*FTC v. Williams, Scott & Associates* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7ᵗʰ Cir., July 27, 2010) . . . . . . . . . . .  16, 17

*Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270 (D. Conn. 2007) . . . . . . . . . . . . . .  5

*Griswold v. J & R Anderson Bus. Servs.*, 82-1474, 1983 U.S.Dist. LEXIS 20365, *2-4
    (D.Ore. Oct. 21, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Gutierrez v. LVNV Funding, Inc.*, EP-08-CV-225-DB, 2009 U.S. Dist. LEXIS 54479, *3
    (W.D. Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hart v. FCI Lender Services, Inc.*, No. 13-CV-6076, 2014 WL 198337, at *6
    (W.D.N.Y. Jan. 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

*Herzlinger v. Nichter*,  No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, 2011 U.S. Dist.
    LEXIS 116841 (S.D.N.Y. Sept. 8, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Horkey v. J.V.D.B. & Associates*, 179 F.Supp.2d 861, 865 (N.D.Ill. 2002), aff'd, 333 F.3d 769
    (7ᵗʰ Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hosseinzadeh v.  M.R.S. Assocs., Inc.*, 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005) . . . . . . . . .  14

*Huckfeldt v. BAC Home Loans Servicing, LP*, No. 10-cv-1072, 2011 WL 4502036 at *5 (D.
    Colo. Sept 29, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Janetos v. Fulton, Friedman & Gullace, LLP*, 2013 WL 791325 (N.D.Ill. 2013) . . . . . . . . . .  6

*Jang v. A.M. Miller & Assocs.*, 122 F. 3d 480, 484 (7ᵗʰ Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 10

*Keele v. Wexler*, 149 F.3d 589, 594 (7ᵗʰ Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kimbro v. I.C. Sys., Inc.*, 336 F. Supp. 2d 188 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

*Krapf v. Collectors Training Institute of Illinois, Inc.,* 09-CV-391S, 2010 WL 584020
(W.D.N.Y., February 16, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 236 (2d Cir.1998) . . . . . . . . . . . . . . . 4

*Marisco v. NCO Financial Systems, Inc.,* 12cv6220, 2013 WL 2285195
(E.D.N.Y., May 23, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McDowall v. Cogan,* 216 F.R.D. 46, 51 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1016-19 (7th Cir. 2014) . . . . . . . . . . . . . 19

*Minh Vu Hoang v. Rosen,* 2013 WL 781780 (D.Md. Feb. 28, 2013) . . . . . . . . . . . . . . . . . . . . 6

*Moore v. Mortgage Elec. Registration Sys., Inc.,* 10-CV-241-JL, 2013 WL 1773647
(D.N.H. Apr. 25, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Morgan v. Account Collection Tech., LLC,* No. 05-CV-2131 (KMK), 2006 WL 2597865, 2006
U.S. Dist. LEXIS 64528, *15-17 (S.D.N.Y. Sept. 6, 2006) . . . . . . . . . . . . . . . . . . . . . 18

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2nd Cir. 1973). . . . . . . . . . . . . . 3

*Nasca v. GC Servs. LP,* No. 01CIV10127(DLC), 2002 WL 31040647, 2002 U.S. Dist. LEXIS
16992, *3 (S.D.N.Y. Sept. 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nichols v. Byrd,* 435 F. Supp. 2d 1101 (D. Nev. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Oppong v. First Union Mortg. Corp.,* 566 F. Supp.2d 395 (E.D. Pa. 2008) . . . . . . . . . . . . . . 11

*Paris v. Steinberg & Steinberg,* 828 F.Supp. 1212 (W.D.Wash. 2011) . . . . . . . . . . . . . . . . . . 11

*Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2nd Cir. 1989) . . . . . . . . . . . . 4, 14

*RMB Holdings, LLC v. Goldberg & Associates, LLC,* No. 3:07-cv-406 (E.D.Tenn.) . . . . . . . . 8

*Robinson v. Nationstar Mortgage, LLC,* Case No. 2:12-cv-718, 2012 U.S. Dist.
LEXIS 163268, 2012 WL 5596421 (S.D.Ohio, Nov. 15, 2012) . . . . . . . . . . . . . . . . . . 6

*Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Savino v. Computer Credit, Inc.,* 164 F.3d 81, 87 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 4

*Schaake v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 108, 112 (S.D.N.Y. 2001) . . . . . . . . . .  18

*Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Senftle v. Landau*, 390 F. Supp. 2d 463 (D.Md. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . .  5

*Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3rd Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . .  17

*Smith v. Hecker*, No. Civ. A. 04-5820, 2005 WL 894812, at *6 (E.D. Pa. Apr. 18, 2005) . . . .  13

*Sparkman v. Zwicker & Assoc., P.C.*, 374 F.Supp.2d 293, 300-01 (E.D.N.Y. 2005) . . . . . . . . .  6

*Stair v. Thomas & Cook*, 254 F.R.D. 191, 194-197 (D. N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . .  6

*Sussman v. I.C. System, Inc.*, 12cv181, 2013 WL 842598 (S.D.N.Y., March 6, 2013) . . . . . . .  15

*Sutton v. Law Offices of Alexander L. Lawrence,* 1992 U.S.Dist. LEXIS 22761, *8
    (D.Del. June 17, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 10

*Thompson v. BAC Home Loans Servicing, L.P.*, 09-cv311, 2010 WL 1286747
    (N.D.Ind., March 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 15, 16

*Tipping-Lipshie v. Riddle*, 2000 WL 33963916, *3 (E.D.N.Y. March 2, 2000) . . . . . . . . . . . .  7

*Turner v. Shenandoah Legal Group, P.C.,* 3:06cv045, 2006 U.S. Dist. LEXIS 29341, *32-39,
    2006 WL 1685698, *11 (E.D.Va. June 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 10

*United States  v. Loney*, 219 F.3d 281, 284 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Goldberg*, 09-80030-CR (S.D. Fla) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*United States v. Thompson*, 32 F.3d 1, 7 (1st Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Vega v. Credit Bureau Enterprises*, No. CV–02–1550 (DGT), 2003 WL 21544258, 2003 U.S.
    Dist. LEXIS 11539, *3-5 (E.D.N.Y. July 9, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Webb v. Midland Credit Mgmt.*, No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006
    (N.D. Ill., May 31, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Weiss v. Regal Collections,* 385 F.3d 337, 348 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981) . . . . . . . . .  3

*Wood v. M&J Recovery LLC,* No. CV 05-5564, 2007 U.S. Dist. LEXIS 24157
    (E.D.N.Y. Apr. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174, 177 (S.D.N.Y. 2011)
    citing *Clomon*, 988 F.2d at 1318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

### Statutes

15 U.S.C. §1692a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

15 U.S.C. §1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

15 U.S.C. §1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 11, 13

15 U.S.C. §1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

15 U.S.C. §1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*  . . . . . . . . . . . . . . . . . . . . . . .  passim

Fed. R. Civ. P. Rule 12(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Fed. R. Civ. P. Rule 68  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Gramm-Leach-Bliley Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

RESPA, 12 U.S.C. §2605(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 11, 15

### Other Authorities

Petry, Corinna C., *Do Your Homework; Dangers often lay hidden in secondary market debt*
    *portfolio offerings. Here are lessons from the market pros that novices can use to avoid*
    *nasty surprises,* Collections & Credit Risk, Mar. 2007  . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Federal Trade Commission's Staff Commentary on the Fair Debt Collection Practices Act,
    53 F.R. 50,097 (Dec. 13, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697,
    *reprinted in* Hobbes, *Fair Debt Collection* (7th ed) Vol. 2, pp. 724-728  . . . . . . . . . . . . .  3

The motion to dismiss of Defendant Real Time Resolutions, Inc. ("Real Time")  should be denied because (1) Real Time must send its own validation notice to comply with the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g; it cannot rely on the validation letter sent by Solace Financial LLC. ("Solace"); (2) Real Time's mailing of a RESPA notice to Plaintiff does not excuse Real Time from complying with the initial disclosure requirements of the FDCPA; (3) Real Time's Offer of Judgment does not moot Plaintiff's claim since Plaintiff's counsel filed a letter requesting a pre-motion conference for leave to file a motion for class certification (Dkt No.4) pursuant to this Court's Individual Practices, § III(A)(i).

**I.     FACTS**

Real Time Resolutions, Inc. is engaged in the business of servicing residential mortgage loans. (Complaint ("C") ¶ 6.)  Many of the loans which Real Time services are delinquent when Real Time first becomes involved with them.  (C ¶ 7.)  Real Time holds itself out as  a "special servicer," i.e., one which has expertise in handling delinquent loans and effectively integrating them onto its servicing platform.  (C ¶ 8.)  Real Time uses the mails and telephone system in conducting its business. (C ¶ 9.)  Real Time is a debt collector as defined by the FDCPA. (C ¶ 10.)

Real Time has been attempting to enforce against Plaintiff Angelique Tocco ("Ms. Tocco") a residential mortgage loan entered into for personal, family or household purposes, namely, housing. On or about July 31, 2013, Real Time sent Ms. Tocco the document attached to the Complaint as <u>Exhibit A</u>.  <u>Exhibit A</u> was the first document which Real Time sent to Plaintiff.

Plaintiff alleges that <u>Exhibit A</u> to Plaintiff's Complaint is a form document intended for use as the initial document which Real Time sends to a borrower whose loan is transferred to it and is believed by Real Time to be delinquent. Real Time treated Plaintiff's loan to be delinquent at the time of the transfer.

<u>Exhibit A</u> to Plaintiff's Complaint states that the servicing of Plaintiff's loan was transferred to Real Time effective July 26, 2013, which is the "transfer date." <u>Exhibit A</u> purports

to contain the disclosures required by 15 U.S.C. §1692g, and is the document which Real Time uses for the purpose of attempting to comply with 15 U.S.C. §1692g.

Exhibit A to Plaintiff's Complaint fails to comply with 15 U.S.C. §1692g because:

     a.    It requires that notice of any dispute be given within 30 days after the transfer date, a date which has already past, rather than within 30 days after receipt of Exhibit A.

     b.    It fails to disclose the current owner or creditor.

Defendant did not send Plaintiff any other document except Exhibit A prior to October 1, 2013.

On October 1, 2013 Defendant sent Plaintiff the letter attached as Exhibit B to Plaintiff's Complaint. Exhibit B also fails to comply with 15 U.S.C. §1692g because it seeks a payment through a work out or modification of the loan without:

     a.    disclosing the amount of the debt;

     b.    identifying the name of the creditor to whom the debt is owed; or

     c.    informing Plaintiff of her right to dispute the debt.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this litigation on February 10, 2014. Shortly after filing the class action Complaint, on February 21, 2014 Plaintiff's counsel served a letter requesting a pre-motion conference for leave to file a motion for class certification (Dkt No.4). Plaintiff's letter to the Court explained that the purpose of the pre-motion conference letter was to avoid having the class claims mooted by a Rule 68 Offer of Judgment or other tender. Subsequently on February 27, 2014, Real Time tendered an offer of judgment. On May 23, 2014, this Court determined that it would treat Plaintiff's February 21, 2014 letter as the filing of a motion for class certification in considering Real Time's motion to dismiss.

## III.    THE FDCPA

In enacting the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), Congress recognized the  --

> universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . .  [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697, *reprinted in* Hobbes, *Fair Debt Collection* (7th ed) Vol. 2, pp. 724-728.  The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors."15 U.S.C. §1692(e). The Act is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt. The Act also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.*, 839 F.Supp. 941 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors*, 473 F.2d 1210, 1214 (2nd Cir. 1973). Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666  (7th Cir. 2001); *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981).

3

"Congress intended the Act to be enforced primarily by consumers . . . ." *FTC v. Shaffner*, 626 F.2d 32, 35 (7ᵗʰ Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2ⁿᵈ Cir. 1989).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated").   Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *accord, Foti v. NCO Fin. Sys., Inc.*, 424 F.Supp.2d 643, 661 (S.D.N.Y.2006) ("The FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages.").

The Second  Circuit evaluates a letter's compliance with the FDCPA by the "least sophisticated consumer" standard.  *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993). The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action.  *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 236 (2d Cir.1998). The question is not whether the plaintiff was deceived or misled, but rather whether the least sophisticated consumer would have been misled.

The "least-sophisticated-consumer standard" "ensures that the FDCPA protects all consumers, the gullible as well as the shrewd." *Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174, 177 (S.D.N.Y. 2011) citing *Clomon*, 988 F.2d at 1318.  The letter must be clear and comprehensible to a consumer who is "one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).  The "least sophisticated consumer" is an

4

"ignorant, unthinking, credulous person of below-average intelligence."  *Kimbro v. I.C. Sys., Inc.*, 336 F. Supp. 2d 188 (D. Conn. 2004),  "the most naive and trusting consumer", but who "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Shami v. Nat'l Enter. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012).  The standard "recognizes that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes," *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270 (D. Conn. 2007).

## IV.   REAL TIME  WAS REQUIRED TO SEND A LETTER THAT COMPLIED WITH §1692g

Defendant argues that Real Time's letter did not have to comply with §1692g because a prior owner or servicer of the debt, Solace Financial,  previously sent letters to Ms. Tocco which allegedly complied with §1692g. There is no allegation in the Complaint that Solace did send §1692g-compliant letters to Plaintiff previously. This argument is based on evidence outside the pleadings.  Therefore it should be stricken, unless the Court converts the motion to one for summary judgment and allows Plaintiff discovery on the factual assertions. Fed. R. Civ. P. Rule 12(d).

Real Time relies on a §1692g notice contained in a March 11, 2011 Solace letter to Ms. Tocco to meet its obligation under the FDCPA.  However, Ms. Tocco sued Solace asserting that its notice was inadequate under 15 U.S.C.  §1692g for failing to disclose the creditor.  Real Time thus relies for its compliance with the FDCPA on a letter that violated the FDCPA.  In addition, as Ms. Tocco's Complaint against Real Time alleges, Real Time still has not disclosed to Ms. Tocco the identity of the creditor of her debt.  Lehman, disclosed as the creditor in 2011, is no longer in business.  That disclosure cannot be currently adequate, even if it was correct in 2011 (it is doubtful that Lehman Brothers was the creditor in 2011 since Lehman Brothers filed bankruptcy in 2008; it would be odd to find the name on any entity three years later).

Furthermore, Solace disclosed that the amount of the debt in March of 2011 was $116,940.05. Laffey Declaration, Exhibit C, Exhibit A (docket no. 21).  In its July 31, 2013

letter, (C., Ex. A), Real Time disclosed that the debt is $143,987.12.  An increase of the debt by over $27,000 surely is a piece of information that is significant to a debtor, sufficient to require Real Time to give an explanation upon demand.  A debtor should be notified of her right to seek verification of the amount.

Even if Solace had sent §1692g-compliant letters to Plaintiffs previously, Real Time, as a new debt collector, was required to send a §1692g-compliant letter as well. Section 1692g provides in relevant part:

§ 1692g.  Validation of debts

(a) Notice of debt; contents.  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; . . .

Most courts have held that, even if the first debt collector complies with §1692g with respect to a particular account, subsequent debt collectors attempting to collect on the same account must also comply with §1692g. *Janetos v. Fulton, Friedman & Gullace, LLP*, 2013 WL 791325 (N.D.Ill. 2013) ; *Minh Vu Hoang v. Rosen*, 2013 WL 781780 (D.Md. Feb. 28, 2013)*;  Robinson v. Nationstar Mortgage, LLC*, Case No. 2:12-cv-718, 2012 U.S. Dist. LEXIS 163268, 2012 WL 5596421 (S.D.Ohio, Nov. 15, 2012);  *Stair v. Thomas & Cook*, 254 F.R.D. 191, 194-197 (D. N.J. 2008); *Turner v. Shenandoah Legal Group, P.C.*, 3:06cv045, 2006 U.S. Dist. LEXIS 29341, *32-39, 2006 WL 1685698, *11 (E.D.Va. June 12, 2006);  *Sparkman v. Zwicker & Assoc., P.C.*,

374 F.Supp.2d 293, 300-01 (E.D.N.Y. 2005);  *Francis v. Snyder*, 389 F. Supp.2d 1034, 1040

(N.D. Ill. 2005); *Horkey v. J.V.D.B. & Associates*, 179 F.Supp.2d 861, 865 (N.D.Ill. 2002), aff'd,

333 F.3d 769 (7th Cir. 2003); *Tipping-Lipshie v. Riddle*, 2000 WL 33963916, *3 (E.D.N.Y.

March 2, 2000);  *Sutton v. Law Offices of Alexander L. Lawrence,* 1992 U.S.Dist. LEXIS 22761,

*8  (D.Del. June 17, 1992); *Griswold v. J & R Anderson Bus. Servs*., 82-1474, 1983 U.S.Dist.

LEXIS 20365, *2-4 (D.Ore. Oct. 21, 1983).

Real Time relies on several cases to the contrary.  These cases ignore the text of §1692g,

which refers to "a debt collector," and which is entirely consistent with ***each*** debt collector being

required to provide the initial disclosures. Furthermore, the fact that §1692g(a)(4) requires

compliance in the event a debt has already been reduced to judgment, which judgment would

have been procured through a collection lawyer, indicates that subsequent debt collectors who

try to collect a judgment must comply.

A number of purposes are served by construing the §1692g initial disclosure

requirements as applying to *all* debt collectors who attempt to collect a given debt. Requiring

each debt collector to send initial disclosures allows the consumer to insist that collection efforts

cease pending verification of the debt in a variety of situations where it is clearly required to

protect the consumer. For example, requiring all debt collectors to comply with §1692g mitigates

the widespread problem where the consumer claims that a debt was paid to or settled with a prior

collector:

> [O]n a regular basis this court encounters defendants being sued on the same debt
> by more than one creditor alleging they are the assignee of the original credit card
> obligation.  Often these consumers have already entered into stipulations to pay
> off the outstanding balance due the credit card issuer and find themselves filing
> an order to show cause to vacate a default judgment from an unknown debt
> purchaser for the same obligation.

*Chase Bank USA, N.A. v. Cardello,* 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857, 243 N.Y.L.J. 48

(Richmond Co. Civ. Ct. 2010).

The consumer is also protected by requiring each debt collector assigned to collect an

account to provide verification notices and rights because:

i.      There may be a question whether the new debt collector has a valid assignment of the debt, as in *United States v. Goldberg*, 09-80030-CR (S.D. Fla) (debt buyer charged with a scheme to sell 86,000 accounts that it did not own and 10,000 accounts had already been resold when he was caught),[1] and *Webb v. Midland Credit Mgmt*., No. 11 C 5111, 2012 U.S. Dist. LEXIS 80006 (N.D. Ill., May 31, 2012) (debt was supposedly assigned on numerous occasions without documentation of what was transferred). The problem is quite common. Corinna C. Petry, *Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises,* Collections & Credit Risk, Mar. 2007, at 24 ("More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle. But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent.") (Appendix 1.)

ii.      The consumer may be the victim of a scam whereby "dishonest debt collectors search the court records, obtain the names of judgment debtors and send the debtor a letter stating they have purchased the debt from credit card issuers such as Chase and should all make payments to the third party," *Chase Bank USA, N.A. v. Cardello*, *supra,* 896 N.Y.S.2d at 857-58.  The FTC has recently filed at least six cases against this practice:  *FTC v. Pro Credit Group, et al.*, No.  8:12-cv-00586 (M. Dist. Fla.); *FTC v. Williams, Scott & Associates*

---

[1] One of the purchasers filed a lawsuit against Goldberg.  On May 29, 2008, the court held that "RMB began making attempts to collect the accounts it purchased from Goldberg" even though "Goldberg never delivered title or ownership of the accounts to RMB."  *RMB Holdings, LLC v. Goldberg & Associates, LLC,* No. 3:07-cv-406 (E.D.Tenn.)

8

No. 1:14-cv-1599 (N. Dist. Ga.); *FTC v. Broadway Global Master Inc., also d/b/a BGM, et al.*
No. 212-cv-00855-JAM-GGH (E. Dist. Cal.); *FTC v. Pinnacle Payment Services, LLC, et al.*
1:13-CV-3455 (N. Dist. Ga.); *FTC v. American Credit Crunchers, LLC*, et al., No. 12cv1028 (N.
Dist. Ill.); *FTC v. Caprice Marketing a/k/a Vantage Funding  et al.*,  No. 13-CV-6072 (N. Dist.
Ill.).

    iii.  Collection efforts may be attempted by two or more debt collectors who
each claim to have been authorized to collect the same debt; *Wood v. M&J Recovery LLC,* No.
CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D.N.Y. Apr. 2, 2007) (debtor complained of
multiple collection efforts by various debt buyers and collectors on the same debt, and the
Defendants asserted claims against one another disputing the ownership of the portfolio
involved)

    iv.  Collection efforts are directed by a subsequent debt collector to the wrong
person, as in *Gutierrez v. LVNV Funding, Inc.*, EP-08-CV-225-DB, 2009 U.S. Dist. LEXIS
54479, *3 (W.D. Tex. 2009).

    v.  The debt has changed over time through the addition of interest or fees,
which the consumer is not obligated to pay, *Seeger v. AFNI, Inc.*, 548 F.3d 1107 (7th Cir. 2008).

    Courts that have, contrary to the cases cited by Real Time, construed  §1692g to require
each debt collector to provide initial disclosures have pointed to the purpose of the FDCPA in
protecting consumers. For example, the *Griswold* court stated:

> The provision which provides for validation information, as well as that which
> provides for verification must apply to each debt collector in order to afford the
> consumer the protection intended by Congress. In addition, this interpretation
> conserves judicial resources. The requirement that each debt collector comply
> with the statutory notification provisions relieves a court of the task of
> determining which debt collector sent the original notice, whether the debt has
> remained unchanged, and whether the original notice was adequate.

*Griswold*, *supra*, 1983 U.S. Dist. LEXIS 20365, at *3-4. Similarly, the *Turner* court noted:

> The overall purpose of the FDCPA is for the protection of consumers as well as the protection of debt collectors that utilize fair methods. The purpose of §1692g is to eliminate the problem of debt collectors dunning the wrong person or trying to collect debts the consumer has already paid. Such purposes can be best promoted by the interpretation as set forth in such authority as *Griswold* [requiring each debt collector to send a § 1692g-compliant initial disclosure.]

*Turner*, *supra*, 2006 U.S. Dist. LEXIS 39341, at *38-39.

Similarly, the staff commentary of the Federal Trade Commission, the administrative agency which until 2011 was entrusted with the responsibility of administering and enforcing the FDCPA, stated that each debt collector should comply with §1692g's initial disclosure requirements:

> An attorney who regularly attempts to collect debts by means other than litigation, such as writing the consumer demand letters (dunning notices) or calling the consumer on the phone about the obligation (except in response to a consumer's call to him as the suit has been commenced) *must provide the required notice, even if a previous debt collector (or creditor) has given such notice*.

Federal Trade Commission's Staff Commentary on the Fair Debt Collection Practices Act, 53 F.R. 50,097 (Dec. 13, 1988) (cited in *Sutton*, *supra*, 1992 U.S. Dist. LEXIS 22761, *8-9 (emphasis added by the court)).

Finally, construing §1692g advocated by Real Time allows for blatant fraud. In *Jang v. A.M. Miller & Assocs.*, 122 F. 3d 480, 484 (7th Cir. 1997), the court held that a debt collector, in response to a consumer's dispute, need not provide verification of the debt to the consumer if, instead, the debt collector ceases all collection activities with respect to the debt. Under the *Waters* court's construction of §1692g, Collector I could provide a non-compliant initial disclosures, receive a request for verification from the consumer, and decline to provide verification of the debt to the consumer, ceasing all collection activities instead. Collector II

could then attempt to collect the debt without providing verification or offering to do so via the initial disclosures. Facing collection attempts from Collector II, the consumer would now have (a) not received verification of the debt from Collector I and (b) no right to request verification from Collector II.

The cases Real Time relies upon[2] do not address the above arguments and are simply wrong. *Oppong* concludes that a second notice would serve no purpose. However, where as here the debt has increased $27,000 in two years, where the name of the creditor has never been properly disclosed or where the creditor originally disclosed is no longer in business or may have been defunct when the original notice was sent, there is a purpose for a second notice, other than the disclosure of a successor debtor, which *Paris* disparaged.

It is difficult to see how the FDCPA has protected the consumer from abusive debt collection methods by excusing Collector II from giving the initial disclosures. Surely, this absurd result could not have been intended by Congress when it enacted the FDCPA.

In any event, the making of an ambiguous statement concerning "transfer" of a debt violates §1692e.

## V.   REAL TIME'S SENDING OF A RESPA NOTICE DOES NOT EXEMPT IT FROM COMPLYING WITH THE NOTICE REQUIREMENTS OF THE FDCPA

Real Time argues that because it's initial letter to Ms. Tocco contained a notice sent pursuant to RESPA, 12 U.S.C. §2605(b), it is not subject to the FDCPA, relying upon *Hart v. FCI Lender Services, Inc.*, No. 13-CV-6076, 2014 WL 198337, at *6 (W.D.N.Y. Jan. 15, 2014)

---

[2]    *Ditty v. Checkrite LTD*, 973 F. Supp. 1320 (D. Utah 1997); *Nichols v. Byrd*, 435 F. Supp. 2d 1101 (D. Nev. 2006); *Senftle v. Landau*, 390 F. Supp. 2d 463 (D.Md. 2005); *Oppong v. First Union Mortg. Corp.*, 566 F. Supp.2d 395 (E.D. Pa. 2008); *Paris v. Steinberg & Steinberg,* 828 F.Supp. 1212 (W.D.Wash. 2011); Huckfeldt v. BAC Home Loans Servicing, *LP*, No. 10-cv-1072, 2011 WL 4502036 at *5 (D. Colo. Sept 29, 2011); *Moore v. Mortgage Elec. Registration Sys., Inc.*, 10-CV-241-JL, 2013 WL 1773647 (D.N.H. Apr. 25, 2013).

and *Thompson v. BAC Home Loans Servicing, L.P.*, 09-cv311, 2010 WL 1286747 (N.D.Ind., March 26, 2010). *Hart* is on appeal to the Second Circuit (2nd Cir. No. 14-191)[3] and *Thompson* is no longer good law in the Circuit that decided it.

     *Hart* improperly segmented the two letters pled in Plaintiff's Complaint. It erroneously held that FCI's initial letter was not a communication in connection with the collection of a debt because it did not expressly demand payment, even though it directed the consumer where to pay, referred to past due payments, and purported to contain the "notice of debt" which the FDCPA requires as a precursor to further collection attempts. *Hart*'s conclusion is wrong, both considering the initial letter by itself, and considering it as part of FCI's overall collection efforts.

     "Communication" is broadly defined in §1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Nothing in §1692a(2) permits a court to consider the "overall tone and content of the notice" or other subjective factors. Exhibit A is the first communication that Real Time had with Plaintiff. It is therefore "the initial communication with a consumer . . . ."

     Exhibit A to Plaintiff's Complaint is also sent "in connection with the collection of any debt." "In connection with" is an extremely "broad" and "expansive" phrase. *United States v. Loney*, 219 F.3d 281, 284 (3rd Cir. 2000); *United States v. Thompson*, 32 F.3d 1, 7 (1st Cir.1994); *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996). The Second Circuit has agreed that it is expansive and held it to be synonymous with "relate to," "associated with," "with respect to," and "with reference to." *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 157 (2d Cir. 2005).

---

    [3]    The argument is set for August 27, 2014.

Here, Exhibit A to Plaintiff's Complaint expressly refers to "all past due payments."  It tells the consumer where to send her payments.  It also contains  the statutory disclosures prescribed by 15 U.S.C. §1692g,  altered in a misleading form.

Informing a consumer where to send payments and providing misleading advice to the consumer of his rights to dispute the debt and request verification is "information regarding a debt" that is provided "in connection with the collection of any debt."

Indeed, a §1692g notice is quintessentially a debt collection communication.  It is called a "Notice of debt" by the statute.  It is supposed to inform a consumer of his right to dispute the debt. Its transmission is a mandatory prerequisite to any further collection activity.   Here, not only are required §1692g disclosures omitted, but FCI improperly tells consumers that if they do not contest the debt within 30 days of receipt, it will be assumed to be valid, without limitation. "[O]mission of 'by the debt collector' would lead a least sophisticated debtor to believe that unless she disputes the validity of the debt . . . her debt will be . . . determined to be valid by a court, credit reporting agency, or other entity of authority [or] imposed upon her using a valid procedure . . . ."  *Smith v. Hecker*, No. Civ. A. 04-5820, 2005 WL 894812, at *6 (E.D. Pa. Apr. 18, 2005).

It is common practice for debt collectors to send consumers initial notices which consist of little more than a request for payment plus the statutory disclosures mandated by §§1692g and 1692e(11). *Chauncey v. JDR Recovery Corp., supra*, 118 F.3d 516 (7th Cir. 1997).  Courts have repeatedly imposed liability if the disclosures did not comply with §§1692g and 1692e(11).  *Id.* Since the debt collector merely has to copy the language from the statute and "fill in the blanks" regarding the amount of the debt and its current owner, compliance should be quite simple. Courts in this Circuit have repeatedly held that communications containing far less information

13

about a debt than AC, <u>Exhibit A</u> are debt collection communications.  In the leading decision of

*Foti v. NCO Financial Systems*, 424 F. Supp.2d 643, 655 (S.D.N.Y. 2006), the court held that a

voicemail message that merely requested a return call to discuss an unspecified "business

matter" were subject to the FDCPA.   The court held that:

> Defendant's voice message, while devoid of any specific information about any
> particular debt, clearly provided some information, even if indirectly, to the intended
> recipient of the message.  Specifically, the message advised the debtor that the matter
> required immediate attention, and provided a specific number to call to discuss the
> matter.  Given that the obvious purpose of the message was to provide the debtor with
> enough information to entice a return call, it is difficult to imagine how the voicemail
> message is not a communication under the FDCPA.  (424 F.Supp.2d  at 655-6)

The court held that "consistent with Congress' intent in enacting the FDCPA, the statute

[including the meaning of the word "communication"] should be construed broadly." *Foti*, 424

F.Supp.2d at 655 (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d

Cir.1989)). As the statute is intended to protect consumers, it must be liberally construed in favor

of consumers. *Id.* (citing *Blair v. Sherman Acquisition*, no. 04 Civ. 4718, 2004 WL 2870080, at

*2 (N.D.Ill. Dec. 13, 2004)).  It was enough that the call was "the first step in a process designed

to communicate with plaintiff about her alleged debt," *Id*., at 656, citing *Hosseinzadeh v.  M.R.S.*

*Assocs., Inc.*, 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005).  Finally, the *Foti* court was guided by

its concern that a more narrow reading of the term "communication" would "create a significant

loophole in the FDCPA," allowing debt collectors to "circumvent . . . provisions of the FDCPA

that have a threshold 'communication' requirement." *Id.* at 657.

Similarly, in *Krapf v. Collectors Training Institute of Illinois, Inc.,* 09-CV-391S, 2010

WL 584020 (W.D.N.Y., February 16, 2010), the court held that a voicemail message seeking a

return call was subject to the FDCPA even though the caller "did not disclose that he was a debt

collector, did not provide Defendant's name, and did not state that the call was an effort to collect

a debt."  (Indeed, those were some of the violations.)

Other decisions from within the Second Circuit holding that the FDCPA applies to even a simple message requesting a return call and not providing any further information about the debt include *Cerrato v. Solomon & Solomon*, 909 F.Supp.2d 139 (D.Conn. 2012); *Sussman v. I.C. System, Inc.*, 12cv181, 2013 WL 842598 (S.D.N.Y., March 6, 2013); and  *Marisco v. NCO Financial Systems, Inc.*, 12cv6220, 2013 WL 2285195 (E.D.N.Y., May 23, 2013), among many others.

*Hart* then held that Plaintiff had not complied with notice pleading standards with respect to a subsequent collection communication.  It disregarded Plaintiff's allegations relating to FCI's later collection efforts and then refused to allow Plaintiff to amend to supply the perceived deficiency, relying on the fact that the deadline for joinder of parties and amendment of pleadings had passed.

All of these rulings were erroneous.  Like Real Time here, FCI sent an initial letter which on its face violates 15 U.S.C.§1692g, and then sent further collection communications without any further attempt to comply with 15 U.S.C.§1692g.

*Thompson* held that a notice which consisted of a RESPA transfer of servicing notice, directing the consumer where to send payments, and a Gramm-Leach-Bliley Act "privacy notice" – but which did not refer to past due payments or attempt to set forth any of the disclosures required by §1692g  –  was not subject to the FDCPA.   *Thompson*  reasoned that "The Notice does not address the status of the Plaintiff's home mortgage loan, declare that it is in default, or demand any payment pursuant to such default. . . . There is no indication that the Defendants are undertaking collection efforts for missing or late payments. Rather, they are providing information about the new servicer, including its payment remittance address . . . ."

15

(*4)

Here, Real Time's initial notice purports to make FDCPA disclosures and states that Real Time specializes in the "recovery and rehabilitation of secured and unsecured debt." In its second communication with Ms. Tocco, Real Time asked Ms. Tocco to make arrangements to resolve her past due account. The *Thompson* notice did not contain an attempt to make the disclosures that are a legal condition precedent under §1692g to the sending of further payment demands. No issue was raised in *Thompson* concerning any subsequent communications.

Moreover, *Thompson* unduly restricts the plain language of the FDCPA. A notice directing a consumer where to send payment on a delinquent debt is "information regarding a debt" that is provided "in connection with the collection of any debt."

*Thompson* is no longer good law in the Circuit which decided it. Four months later, the Court of Appeals for the Seventh Circuit held in *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7th Cir., July 27, 2010), that a communication may be the "initial communication with a consumer in connection with the collection of any debt" even if it does not ask for payment at all. Two letters were at issue in *Gburek*. The first, from Litton, apprised a delinquent mortgagor of "foreclosure alternatives" and asked for financial information for the purpose of evaluating those alternatives. The second, from Litton agent Titanium Solutions, asked the mortgagor to provide the financial information to Litton. The two letter in *Gburek* are similar to *Exhibit B* here.

The Court of Appeals in *Gburek* held that both letters were communications subject to the FDCPA, even though neither requested payment. It pointed out that the parties had no other relationship besides debtor and debt collector, and that the purpose of the communications was to induce contact and, ultimately, resolution of the debt by the debtor.

16

*Gburek* has since been followed by the Third Circuit, *Allen v. LaSalle Bank*, 629 F.3d 364 (3rd Cir. 2011); *Simon v. FIA Card Services, N.A.*, 732 F.3d 259 (3rd Cir. 2013).

*Foti v. NCO,* 24 F.Supp.2d 643, 661 (S.D.N.Y.2006) and its progeny have consistently held that any communication intended to establish contact with a defaulted debtor or facilitate later communications that demand payment from a defaulted debtor ***is*** a communication subject to the FDCPA.  Under that standard, and the plain language of the FDCPA, FCI's initial letter is a debt collection communication.  Further, <u>Exhibit B</u> to Plaintiff's Complaint is clearly a debt collection communication under *Gburek* and §1692g was not complied with.

## VI.    PLAINTIFF'S CLAIMS ARE NOT MOOT

Real Time argues that its tender of an offer of judgment on February 27, 2014 mooted Plaintiff's claim thus subjecting it to dismissal for lack of subject matter jurisdiction.  However, Ms. Tocco brought this matter as a class action and on February 21, 2014 served on Defendant's counsel a letter requesting a pre-motion conference for leave to file a motion for class certification[4].  On April 23, 2014, this Court determined that it would treat Plaintiff's February 21, 2014 letter as the filing of a motion for class certification in considering Real Time's motion to dismiss. In these circumstances, tender to Plaintiff of her full damages without tender of class relief does not result in a mooting of Plaintiff's claims.  Thus Real Time's motion to dismiss for lack of

---

[4]    The pre-motion conference letter was submitted in accordance with §III of the Individual Practices of Judge William H. Pauley which provides:

**III. Motions**
> A. **Pre-Motion Conferences in Civil Cases.**
>
> i. ***A pre-motion conference is required prior to the filing of any motion*** except: discovery motions; motions with a jurisdictional time limit as provided by the Federal Rules of Appellate Procedure; motions brought on by order to show cause; motions for reargument or reconsideration; motions by incarcerated pro se litigants; motions for admission pro hac vice; motions for attorneys' fees; motions for remand; and motions to appoint lead plaintiff and lead defense counsel in securities class actions.

jurisdiction should be denied.

Plaintiff's letter requesting a pre-motion conference served as the equivalent of having a class certification motion on file, and thus the class claims were protected at the time Real Time made its Offer of Judgment. Section III(A)(i) of Judge Pauley's Individual Practices provides that "a pre-motion conference is required prior to the filing of any motion[.]" As such, Plaintiff filed what was she was permitted to file in accordance with this Court's Rules of Practice.

Defendant's purported Offer of Judgment does not offer relief to the putative class. Numerous district courts, including those in the Second Circuit, are in agreement that "the flexible nature of the mootness doctrine and concerns about buy-offs, have fashioned a rule that, absent undue delay, a plaintiff may move to certify a class and avoid mootness (even after being offered complete relief)." *Weiss v. Regal Collections,* 385 F.3d 337, 348 (3d Cir. 2004); *McDowall v. Cogan*, 216 F.R.D. 46, 51 (E.D.N.Y. 2003) ("when a Defendant wishes to make a Rule 68 Offer prior to class certification . . . it must do so to the putative class and not to the named Plaintiff alone. . . . [t]his resolution allows the court to avoid the potential friction between Rule 68 and Rule 23."); *Schaake v. Risk Mgmt. Alternatives, Inc.,* 203 F.R.D. 108, 112 (S.D.N.Y. 2001); *Morgan v. Account Collection Tech., LLC*, No. 05-CV-2131 (KMK), 2006 WL 2597865, 2006 U.S. Dist. LEXIS 64528, *15-17 (S.D.N.Y. Sept. 6, 2006); *Vega v. Credit Bureau Enterprises*, No. CV–02–1550 (DGT), 2003 WL 21544258, 2003 U.S. Dist. LEXIS 11539, *3-5 (E.D.N.Y. July 9, 2003) (finding that "[p]laintiff's claims ought not to be rendered moot by an offer of judgment submitted before counsel has a reasonable opportunity to compile a record necessary to support a motion for class certification."); *Nasca v. GC Servs. LP*, No. 01CIV10127(DLC), 2002 WL 31040647, 2002 U.S. Dist. LEXIS 16992, *3 (S.D.N.Y. Sept. 12,

2002) (refusing to find Plaintiff's Complaint moot where Plaintiff had not "had a reasonable opportunity to file a motion for certification[]" prior to defendant's offer of judgment); *Herzlinger v. Nichter*, No. 09 Civ. 00192(JSG)(PED), 2011 WL 4585251, 2011 U.S. Dist. LEXIS 116841 (S.D.N.Y. Sept. 8, 2011). In *3081 Main Street, LLC v. Business Owners Liability Team LLC*, No. 3:11–cv–1320 (SRU), 2012 WL 4755048 (D.Conn. Sept. 24, 2012), the court stated: "I need not pass upon the merits of the *Damasco* decision; suffice it to say that the Second Circuit has never adopted such a rule and at least four other circuits have reached the opposite conclusion."

Real Time relies on *Damasco v. Clearwire Corp.*, 662 F.3d. 891 (7th Cir. 2011). But *Damasco* held that "Class-action plaintiffs can move to certify the class at the same time that they file their Complaint; the pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." 662 F.3d at 896; *see also, McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1016-19 (7th Cir. 2014). *Doyle v. Midland Credit Mgmt, Inc.*, 722 F.3d 78 (2d Cir. 2013), also relied upon by Real Time, is not relevant because it was not a class action.

Since the filing of a class motion protects against mooting out a class action by buying off a plaintiff, Defendant's position, at p. 17 if its Memorandum, that its offer of judgment means that Ms. Tocco cannot adequately represent the class is without merit.

At the very least, these courts allow a motion for class certification to relate back when it is filed within the period for acceptance of the offer of judgment. *McDowall v. Cogan, supra.* Here, the case has barely been pending two months, and Plaintiff took the only steps that she could take with respect to protecting the class claims.

## VII.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

Respectfully Submitted,


<u>s/ Tiffany N. Hardy</u>
Tiffany N. Hardy

Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
     & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Abraham Kleinman
KLEINMAN LLC
626 RXR Plaza
Uniondale, New York 11556
(516) 522-2621

20

## <u>CERTIFICATE OF SERVICE</u>

I, Tiffany N. Hardy, hereby certify that on July 23, 2014, I caused to be filed the foregoing documents via the CM/ECF System, which caused to be sent notification of such filing to the following parties via electronic mail:

Abraham Kleinman
akleinman@kleinmanllc.com

Casey Devin Laffey
claffey@reedsmith.com

Geoffrey Garrett Young
gyoung@reedsmith.com

<u>s/Tiffany N. Hardy</u>
Tiffany N. Hardy

21