**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ANGELIQUE TOCCO, individually and on behalf of a class, | : : : | No. 14-CV-810 (WHP) |
| Plaintiff, | : : | ECF FILED |
| v. | : : | |
| REAL TIME RESOLUTIONS, INC. | : : | |
| Defendant. | : : : | |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

      I.      Real Time Was Not Required To Follow The Validation Notice Sent By Its Predecessor-In-Interest With A Second Validation Notice Related To The Same Debt Owed By Plaintiff ............................... 2

      II.     Plaintiff's Claims Premised Upon The Initial Letter Are Subject To RESPA, Not The FDCPA .......................................................................... 5

      III.    Plaintiff's Claims Are Well Suited For Dismissal On Mootness Grounds ..................................................................................................... 7

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**             **Page**

*Ambalu v. Rosenblatt*,
    194 F.R.D. 451 (E.D.N.Y. 2000) ........................................................... 8

*Damasco v. Clearwire Corp.*,
    662 F.3d 891 (7th Cir. 2011) ................................................................ 7

*Ditty v. Checkrite LTD, Inc.*,
    973 F. Supp. 1320 (D. Utah 1997) ....................................................... 3

*Doyle v. Midland Credit Mgmt., Inc.*,
    722 F.3d 78 (2d Cir. 2013) ................................................................... 7

*Edge v. C. Tech Collections, Inc.*,
    203 F.R.D. 85 (E.D.N.Y. 2001) ........................................................... 9

*Franco v. Allied Interstate, LLC*,
    No. 13 Civ. 4053, 2014 WL 1329168 (S.D.N.Y. Apr. 2, 2014) ........... 2, 9

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013) ......................................................................... 9

*Hart v. FCI Lender Services, Inc.*,
    No. 13-CV-6076, 2014 WL 198337 (W.D.N.Y. Jan. 15, 2014) ........... 6, 7

*Jacobson v. Healthcare Financial Services, Inc.*,
    434 F. Supp. 2d 133 (E.D.N.Y. 2006),
    *rev'd on other grounds*, 516 F.3d 85 (2d Cir. 2008) ............................ 5

*Koch v. Christie's International PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011) .................................................. 4

*Morgan v. Account Collection Tech., LLC*,
    No. 05-CV-2131, 2006 WL 2597865 (S.D.N.Y. Sept. 6, 2006) ........... 8

*Nichols v. Byrd*,
    435 F. Supp. 2d 1101 (D.Nev. 2006) ................................................... 4

*Oppong v. First Union Mortg. Corp*,
    566 F. Supp. 2d 395 (E.D. Pa. 2008) ................................................... 3

*Senftle v. Landau*,
    390 F. Supp. 2d 463 (D.Md. 2005) ...................................................... 3

*Thompson v. BAC Home Loans Servicing, L.P.*,
    No. 09-CV-311, 2010 WL 1286747  (N.D. Ind. Mar. 26, 2010) ........... 7

*Tratt v. Retrieval Masters Creditors Bureau, Inc*,
    No. 00-CV-4560, 2001 WL 667602 (E.D.N.Y. 2001) .......................... 8

*Wilner v. OSI Collection Servs., Inc.*,
    201 F.R.D. 321 (S.D.N.Y. 2001) ......................................................... 9

**Statutes**

12 U.S.C. § 2605(b) ........................................................................................................... 5

15 U.S.C. § 1692g ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1

**Other Authorities**

Dee Pridgen & Richard M. Alderman,
*Consumer Credit and the Law* (Nov. 2013) ................................................................... 3

Defendant Real Time Resolutions, Inc. ("Real Time" or "Defendant"), by and through its counsel, Reed Smith LLP, hereby submits this reply memorandum of law in further support of its motion to dismiss the Complaint of plaintiff Angelique Tocco ("Tocco" or "Plaintiff"), individually and as the representative of a putative class, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In a desperate attempt to avoid dismissal of this action, Plaintiff's opposition to Defendant's motion to dismiss takes many liberties in describing the legal precedent that governs the instant motion. Each of Plaintiff's arguments is baseless, and the Complaint should be dismissed in its entirety for numerous reasons:

*First*, to oppose Real Time's argument that it had no obligation to send Plaintiff a *second* validation notice pursuant to the FDCPA, Plaintiff cites to a number of cases outside this Circuit and argues that these cases demonstrate the majority view on the issues. To the contrary, commentators and a survey of federal case law demonstrate that Plaintiff is simply wrong. The majority view supports Real Time's position that the validation notice that Plaintiff previously received from Solace Financial was the only notice that she was entitled to receive, warranting dismissal of this action in its entirety.

*Second*, with respect to Real Time's argument that the initial letter sent to Plaintiff was mandated by RESPA and not subject to the FDCPA, Plaintiff is reduced to arguing that the law relied upon by Real Time was somehow wrongly decided. In so doing, Plaintiff concedes that the facts of this case are similar to the two primary cases relied upon by Real Time. Because Plaintiff's arguments for rejecting the reasoning in the cases relied upon by Real Time is

---

[1] All capitalized terms herein refer to the terms as defined in Defendant's Moving Memorandum of Law ("Moving Brief").

confusing and unavailing, this provides another grounds for dismissing Plaintiff's claim premised on the initial letter.

*Finally*, Plaintiff's attempts to argue that her claims are not mooted by Real Time' Rule 68 Offer of Judgment are without merit.  Notably, Plaintiff wholly ignores the recent decision of Judge Katherine B. Forrest, in *Franco v. Allied Interstate, LLC*, No. 13 Civ. 4053, 2014 WL 1329168, at *5 (S.D.N.Y. Apr. 2, 2014), which details the current jurisprudence on the mootness doctrine in the context of putative class actions and then dismisses the plaintiff's complaint on mootness grounds.  The reasoning in *Franco* is equally applicable here, and should be adopted here.  Because Real Time's Rule 68 Offer of Judgment exceeds any amount that Plaintiff could recover under the FDCPA, Plaintiff's claims are now moot, Plaintiff cannot adequately represent the putative class, and this Court lacks subject matter jurisdiction over this dispute.

Accordingly, this action should be dismissed in its entirety with prejudice and costs awarded in favor of Defendant.

## ARGUMENT

### POINT I

#### REAL TIME WAS NOT REQUIRED TO FOLLOW THE VALIDATION NOTICE SENT BY ITS PREDECESSOR-IN-INTEREST WITH A SECOND VALIDATION NOTICE RELATED TO THE SAME DEBT OWED BY PLAINTIFF

In response to Real Time's argument that it was not required to send a *second* validation notice to Plaintiff – after Plaintiff already received a validation notice from Real Time's predecessor-in-interest for the same debt – Plaintiff distorts the legal landscape on this issue to claim that the prevailing law is that Plaintiff is entitled to a validation notice from each and every debt collector that attempts to collect the same debt.  Contrary to Plaintiff's suggestion that Real Time's argument is premised upon outlier cases that ignore the text of the FDCPA, the exact

opposite is true.  Indeed, it has been recognized that "[m]ost decisions, however, hold that the objectives of the FDCPA are satisfied by the sending of the original validation notice, and that the Act ***does not require*** subsequent collectors to provide additional notice."  Dee Pridgen & Richard M. Alderman, *Consumer Credit and the Law* § 12:13 n. 2 (Nov. 2013) (citing cases) (emphasis added).

Moreover, a survey of the case law makes clear that there is limited federal authority in favor of Plaintiff on this issue, some of which is cited by Plaintiff in her brief.  In addressing these line of cases, the Court in *Oppong v. First Union Mortg. Corp*, observed as follows:

> To the extent that there is authority to the contrary (citations omitted) it is not persuasive.  Under the FDCPA, the goal of the initial communication is to advise the debtor of his rights and obligations to his creditor.  Once the validation information is provided in the initial communication, and once the debtor is made aware of his rights at the time the collection process begins, it would serve no purpose to require that the same information be given again and again, each time the servicing function was passed from one creditor to another.

566 F. Supp. 2d 395, 404 (E.D. Pa. 2008).  Thus, it is Plaintiff – not Real Time – that relies on outlier cases that do not reflect the great majority of decisions on this issue.

Because the case law is decidedly against Plaintiff on this issue, Plaintiff desperately argues that the Courts that have considered this issue must have gotten it wrong.  However, Plaintiffs' contention that the cases relied upon by Real Time were wrongly decided because they "ignore[d] the text of § 1692g," is inaccurate and without merit.  (Opp. Br., p. 7.)

For example, as set forth fully in the Moving Brief, the Court in *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D.Md. 2005) analyzed the plain language of 15 U.S.C. § 1692g, in holding "that there is only one 'initial communication' with a debtor on a given debt under § 1692g(a), even though subsequent debt collectors may enter the picture."  *Id*.  Other decisions followed the same well-reasoned rationale.  *See Ditty v. Checkrite LTD, Inc.*, 973 F. Supp. 1320, 1329 (D. Utah 1997) (holding that "Section 1692g does not require another debt collector, undertaking

- 3 -

collection efforts after a validation notice has been timely sent, to provide additional notice and another thirty-day validation period"); *Nichols v. Byrd*, 435 F. Supp. 2d 1101, 1106 (D.Nev. 2006) (holding that if Congress had intended to obligate every subsequent debt collector beyond the first to provide a validation notice it would have explicitly called for it in 15 U.S.C. § 1692g).

Here, it is undisputed that Plaintiff received a validation notice from Solace Financial, Real Time's predecessor-in-interest in connection with Plaintiff's debt.  (*See* Laffey Decl., Exh. C.)  Although Plaintiff disputes that this Court can consider the prior letter sent by Solace Financial that contains the validation notice, there should be no doubt that this Court has the authority to consider, and take judicial notice of, the Solace Financial letter on this motion because it was attached to Plaintiff's filings in her prior lawsuit against Solace Financial.  *See Koch v. Christie's International PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) ("[C]ourts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint.")  Because Plaintiff cannot dispute that she received a validation notice from Solace Financial and that the validation notice related to the exact same debt that was the subject of Real Time's July 31 and October 1, 2013 letters at issue here, the case law supports dismissal of Plaintiff's action. Plaintiff received the only validation notice she was entitled to receive, and she cannot now claim that Real Time had an obligation to send her ***another*** validation notice.

Furthermore, Plaintiff's policy arguments to support her position that the FDCPA should not be interpreted to require one validation notice – which the majority of Courts have held to be the law – rings hollow.  (Opp. Br., pp. 7-11.)  Plaintiff's recitation of the litany of purported debt collection abuses that the FDCPA was intended to protect against are not present here, and are immaterial to the current issue before this Court.  The nature of Plaintiff's claims against Real

Time in this action relate to, at best, purported technical violations of the FDCPA in that certain information required by the FDCPA to be included in the letters sent to Plaintiff were absent or outdated.  (Opp. Br., p. 2.).  There simply is no support for Plaintiff's suggestions that Real Time engaged in fraud or deceptive practices to collect the debt at issue.  If this Court considers any policy arguments on this motion to dismiss, Real Time respectfully submits that the Court should consider the policy considerations articulated in *Jacobson v. Healthcare Financial Services, Inc.*, where the Court stated:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of this civil liability scheme defined by [the FDCPA], not the individual who has been threatened or misled. The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." *Id*.  Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs.

434 F. Supp. 2d 133, 138-39 (E.D.N.Y. 2006) *rev'd on other grounds*, 516 F.3d 85, 89 (2d Cir. 2008).

Accordingly, there is no dispute that Plaintiff received a validation notice as required by the FDCPA, and her claims against Real Time for the failure to receive ***another*** such notice must therefore be dismissed as a matter of law.

## POINT II

### PLAINTIFF'S CLAIMS PREMISED UPON THE INITIAL LETTER ARE SUBJECT TO RESPA, NOT THE FDCPA

Plaintiff's contention that Real Time's July 31, 2013 letter is subject to the FDCPA is wrong.  Notably, Plaintiff never disputes that Real Time was required to send the July 31 letter pursuant to RESPA, 12 U.S.C § 2605(b), in order to advise Plaintiff that her mortgage loan had

been transferred to Real Time (the "RESPA Letter").   In fact, Plaintiff barely references the

RESPA requirement at all, and she devotes little of her brief to how the RESPA Letter could be

subject to the FDCPA's requirements when it was a required notice under a separate statute.

Instead of addressing this apparent deficiency in her argument, Plaintiff plows ahead to argue

that two of the cases relied upon by Real Time were wrongly decided, and that the RESPA Letter

should have contained the validation notice required by the FDCPA.   In the end, Plaintiff's

arguments are unavailing, and she fails to adequately address Real Time's arguments in the

Moving Brief.

Most significantly, Plaintiff concedes that this case is factually similar to *Hart v. FCI*

*Lender Services, Inc.*, where the Court held that the RESPA-mandated notice in that case was not

subject to the FDCPA and cannot form the basis of a claim premised upon the RESPA notice

lacking language prescribed by the FDCPA.   No. 13-CV-6076, 2014 WL 198337, at *6

(W.D.N.Y. Jan. 15, 2014).   (Opp. Br., p. 15.)   Rather than distinguish the facts of this case from

*Hart*, Plaintiff argues that Hart was wrongly decided and notes that the case is on appeal.   Thus,

it is undisputed that *Hart* is on point and remains good law, and Real Time submits that this

Court should follow this precedent.

Plaintiff's argument that *Hart* was wrongly decided is baseless.   For example, Plaintiff

fails to address the key fact underlying the *Hart* holding, which is that a RESPA-mandated notice

is not communication "in connection with the collection of any debt," as required for the FDCPA

to apply.   By contrast, a RESPA-mandated notice is informational only.   As was the case in *Hart*,

the same is true here for the RESPA Letter.   As detailed in the Moving Brief, the RESPA Letter

plainly is not a communication to collect a debt, and it consists primarily of the content required

by RESPA.   (*See* Laffey Decl., Exh. A at Exh. A.)   Plaintiff's discussion relating to the broad

meaning of "communication" and initial collection calls misses the point.  (Opp. Br., pp. 12-15.)
The RESPA Letter was plainly sent to Plaintiff for a purpose other than collecting a debt – it was
a required notice pursuant to RESPA – and it is not subject to the FDCPA.  *See Thompson v.*
*BAC Home Loans Servicing*, L.P., No. 09-CV-311, 2010 WL 1286747 at *5 (N.D. Ind. Mar. 26,
2010) (holding that letter not subject to FDCPA because although the letter was sent from an
entity whose "ultimate goal" was "ensuring payment of the debt," the communication itself did
not aim to induce payment); *Hart*, 2014 WL 198337, at *6 (holding that RESPA-mandated
notice was not subject to FDCPA because it was "informational in nature, and does not reference
an amount owed or threaten to take any action if payment is not made")

Accordingly, Plaintiff's claims premised upon the RESPA Letter should be dismissed.

## POINT III

### PLAINTIFF'S CLAIMS ARE WELL SUITED
### FOR DISMISSAL ON MOOTNESS GROUNDS

Plaintiff's primary response to Real Time's argument that her claims have become
mooted by her refusal to accept the Rule 68 Offer of Judgment is that she brought this case as a
class action and properly requested leave to move for class certification.  However, Plaintiff
notably does not dispute that Real Time made a Rule 68 Offer of Judgment that exceeds the
amount she could recover on her individual claims in this action, which is fatal to her individual
claims.  *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78 (2d Cir. 2013) (holding that an
offer of judgment moots a plaintiff's claim where the defendant's offer exceeds the amount
plaintiff could recover); *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011)
("[O]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over
which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because [he]
has no remaining stake.").

Plaintiff's reliance upon her pre-motion request for leave to move for class certification is also unavailing.  Although the District Courts in this Circuit are split on the question of whether an offer of judgment to an individual plaintiff made before a certification motion is filed (or while it is pending) moots the putative class action, *see Morgan v. Account Collection Tech., LLC*, No. 05-CV-2131, 2006 WL 2597865 (S.D.N.Y. Sept. 6, 2006), the case law has recently trended towards finding that a Rule 68 offer of judgment does moot a putative class action.  In light of the existing authority discussed below and the facts of this case, this Court should adopt the view that the rejection of Real Time's Rule 68 Offer of Judgment rendered the entirety of this putative class action moot.

Courts in the Second Circuit have dismissed cases as moot when the offer of judgment to the named plaintiff constituted complete relief without considering whether the plaintiff had been given a reasonable opportunity to diligently file a class certification motion. *See Ambalu v. Rosenblatt*, 194 F.R.D. 451 (E.D.N.Y. 2000) (dismissing the case for lack of subject matter jurisdiction without considering the timing of the offer of judgment).  The *Ambalu* Court further elaborated that in a class action case where the class has not been certified and no motion for certification has been made, a Rule 68 offer of judgment applies and the Court's conclusion was unaltered by the fact that the offer of judgment did not propose to compensate the entire class because when the class had not been certified, and "a named representative's claim becomes moot before class certification, the entire class is to be dismissed for lack of subject matter jurisdiction." *Id.* at 453.

In the subsequent *Tratt v. Retrieval Masters Creditors Bureau, Inc*, No. 00-CV-4560, 2001 WL 667602 (E.D.N.Y. 2001) decision, the Court adopted the *Ambalu* holding "as being entirely dispositive" and granting defendant's motion to dismiss.  Despite Plaintiff's attempts to

distinguish the cases relied on by Defendant by injecting considerations of undue delay in this straightforward decisions, it is clear from the plain language of the holdings that an offer of judgment for the entire statutory amount moots the individual and class claims regardless of the timing of the offer.  Similarly, in the *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85 (E.D.N.Y. 2001) and *Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321 (S.D.N.Y. 2001) decisions, while eventually denying the motions on other grounds, this Court "wholeheartedly" agreed with the reasoning in *Ambalu*, without considering the timing of the offer of judgment or any delay in moving for certification on plaintiff's part.

With the recent decision in *Franco v. Allied Interstate LLC*, 2014 WL 1329168 (S.D.N.Y. Apr. 2, 2014), where Judge Forrest dismissed a putative class action, the weight of authority has shifted even more significantly towards dismissal of the entire putative class action in pre-certification stage, without considering issues of undue delay and reasonable opportunity to move for certification.  Notably, Plaintiff does not even attempt to distinguish this Court's recent and on-point decision in *Franco*, which supports dismissal of this putative class action despite Plaintiff's request for leave to move for class certification.  Real Time respectfully submits that this Court should adopt the *Ambalu* and *Franco* reasoning in this case.

Finally, Plaintiff cannot avail herself of the "relation back" doctrine or take advantage of the "picking off" concerns, which are inapplicable here.  The U.S. Supreme Court's reasoning, set forth in the *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1526 (2013), is directly applicable to the case at bar and shows that the "relation back" doctrine and the "picking off" concerns should not prevent dismissal of this case.  This conclusion makes perfect sense when the FDCPA permits all individual plaintiffs to recover not only statutory damages but also all reasonable attorneys' fees and costs.  Thus, individual plaintiffs are incentivized to commence

individual actions for violation of the FDCPA without the need for commencement of a class action.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety and Defendant should be awarded its costs, along with such other and further relief as the Court deems just, proper and equitable.

Dated:  New York, New York
       August 1, 2014

                           REED SMITH LLP

                           By: */s/ Casey D. Laffey*         
                                Casey D. Laffey
                                Geoffrey G. Young
                         599 Lexington Avenue
                         New York, New York 10022
                         Tel. (212) 521-5400
                         Fax. (212) 521-5450
                         *Attorneys for Defendant*